IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-01484-PAB

In re:

EDWARD J. ROMERO,

      Debtor.

EDWARD J. ROMERO,

      Appellant,

v.

KIMBERLEY H. TYSON, as Chapter 7 Trustee,

      Appellee.

---

## ORDER

---

    This is an appeal by debtor Edward Romero from the June 24, 2015 order

[Docket No. 13-1 at 56-66] of the United States Bankruptcy Court for the District of

Colorado (the "bankruptcy court") denying debtor's claim of a homestead exemption for

his vehicle, which debtor adapted to serve as his living quarters.  The Court's

jurisdiction is based on 28 U.S.C. § 158(a).[1]

## I.  BACKGROUND[2]

    Debtor filed a voluntary petition for Chapter 7 bankruptcy on February 9, 2015.

Docket No. 13-1 at 5.  Among his assets, debtor listed a 1997 Peterbilt truck, *id.* at 19,

---

[1] After reviewing the parties' submissions, the Court has determined that oral
argument is not necessary to the resolution of this appeal.

[2]The following facts are not in dispute.

which debtor claimed was exempt as a homestead pursuant to Colo. Rev. Stat. §§ 38-41-201(a) and 38-41-201.5.  Docket No. 13-1 at 21.  On March 18, 2015, the Trustee objected to debtor's claim of exemption for the truck, arguing that the truck is not a "homestead" under Colorado law.  *See generally id.* at 44-46.  On June 10, 2015, the bankruptcy court held an evidentiary hearing on the trustee's objection.  *See generally* Docket No. 13-2.  The bankruptcy court found that debtor owns the truck, which is worth $45,000, that the truck is a commercial vehicle designed to be driven on the road and to tow a trailer to haul goods, that the truck is not designed to be installed in a permanent or semipermanent location, and that the truck is not affixed to real property.  Docket No. 13-1 at 57.  The bankruptcy court further found that debtor has been living in the truck since 1998.  *Id.* at 58.  Regarding the debtor's living quarters in the vehicle, the court found that the truck has a

> fairly large cab which serves as the Debtor's principal living and sleeping quarters.  The cab has a bed, microwave oven, toaster, coffee pot, refrigerator, laser printer, television, light, and vacuum.  In addition to food and water, the Debtor also neatly stores his clothes, laundry, and sundry items in a dozen plastic boxes mainly located in a small loft above the bed.  A self-contained portable toilet rounds out the cab's equipment.  The Debtor's dog lives with him in a small kennel near the bed.  The Peterbilt Truck has a 12-volt generator to provide electricity, heat, and air-conditioning when the vehicle is parked.

*Id.*  The bankruptcy court, after a careful review of the history of the homestead exemption under Colorado law, held that the truck did not qualify as a homestead.[3]

---

[3]Colorado, as permitted by the bankruptcy code, 11 U.S.C. §§ 522(b)(2), (b)(3)(A), has opted out of the code's provision for exemptions.  Under Colorado law, which applies to this dispute, "[e]xemptions authorized to be claimed by residents of this state shall be limited to those exemptions expressly provided by the statutes of this state."  Colo. Rev. Stat. § 13-54-107.

## II. STANDARD OF REVIEW

A party may appeal the "final judgments, orders, and decrees" of a bankruptcy court to either the district court or a bankruptcy appellate panel. 28 U.S.C. §§ 158(a), (c)(1). A district court reviews the Bankruptcy Court's legal conclusions de novo, its factual findings for clear error, and its discretionary decisions for abuse of discretion. *In re Baldwin*, 593 F.3d 1155, 1159 (10th Cir. 2010); *Busch v. Busch (In re Busch)*, 294 B.R. 137, 140 (B.A.P. 10th Cir. 2003) (lifting of automatic stay); *Brasher v. Turner (In re Turner)*, 266 B.R. 491, 494 (B.A.P. 10th Cir. 2001) (excluding an exhibit); *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997) (entering default judgment).

## III. ANALYSIS

The only issue before the Court is whether the bankruptcy court erred in finding that debtor's truck is not subject to Colorado's homestead exemption. Colorado Revised Statute § 38-41-201(1), which codifies the homestead exemption, provides, in relevant part: "[e]very homestead in the state of Colorado shall be exempt from execution and attachment arising from any debt, contract, or civil obligation[.]" Colo. Rev. Stat. § 38-41-201(1). Colorado law further provides that "[t]he homestead mentioned in this part . . . may consist of a house and lot or lots or of a farm consisting of any number of acres." Colo. Rev. Stat. § 38-41-205. "Colorado Courts have expressed a policy of broad and liberal interpretation of the homestead exemption." *In re Wells*, 29 B.R. 688, 689 (Bankr. D. Colo. 1983). "The purpose of Colorado's homestead exemption is to secure to a householder a home for himself and his family,

regardless of his financial condition." *In re Harwell*, No. 07-cv-01283-WYD, 2008 WL 410590, at *3 (D. Colo. Feb. 13, 2008) (citing *Matter of Lombard*, 739 F.2d 499 (10th Cir. 1984)).

In addition to houses and farms, the Colorado General Assembly has included mobile homes, manufactured homes, trailers, and trailer coaches under the state's homestead exemption.  The inclusion of mobile homes arose out of a concern that, "as the cost of conventional housing continues to escalate, mobile homes will become an ever larger percentage of the total housing supply, particularly for the elderly and the low-to-moderate income groups[.]"  Colo. Rev. Stat. § 38-41-201.5.  The statute effectuating the exemption for mobile homes, manufactured homes, and trailers provides:

> (1) A manufactured home as defined in section 38-29-102(6), which includes a mobile home or manufactured home as defined in section 38-12-201.5(2), 5-1-301(29), or 42-1-102(106)(b) . . . that has been purchased by an initial user or subsequent user . . . is a homestead and is entitled to the same exemption as enumerated in section 38-41-201, except for any loans, debts, or obligations incurred prior to January 1, 1983.  For purposes of this homestead exception, the term "house" as used in section 38-41-205 shall be deemed to include mobile homes or manufactured homes.

> (2) A trailer . . . or a trailer coach . . . is a homestead and is entitled to the same exemption as enumerated in section 38-41-201, except for any loans, debts, or obligations incurred prior to July 1, 2000.  For purposes of this homestead exemption, the term "house" as used in section 38-41-205 shall be deemed to include trailers and trailer coaches.

Colo. Rev. Stat. § 38-41-201.6.

Debtor does not argue that his truck fits into any statutory definition of

"manufactured home" or "mobile home."[4]   Instead, debtor argues that the truck is a

"motor home" and that the homestead exemption's reference to a "manufactured home"

is "expansive enough" to incorporate that type of mobile dwelling.   Docket No. 16 at 17.

Colo. Rev. Stat. § 42-1-102(57) defines "motor home" as a "vehicle designed to provide

temporary living quarters and which is built into, as an integral part of or a permanent

attachment to, a motor vehicle chassis or van."   Although he concedes that the truck

does not fit any of the statutory definitions of a "manufactured home" or "mobile home"

specified in Section 38-41-201.6, debtor argues that there is "nothing in section 201.6

that suggests the reference to manufactured homes is exclusive."   Docket No. 20 at 9.

The Court disagrees.   Section 38-41-201.6(1)'s reference to "manufactured home" is

linked to two statutory definitions of the term, Section 38-29-102(6) and Section 42-1-

102(106)(b).   The truck plainly does not satisfy either of these statutory definitions.

Section 38-29-102(6) defines "manufactured home" as "a preconstructed building unit

or combination of preconstructed building units that is constructed in compliance with

the federal manufactured home construction safety standard."   Debtor puts forth no

evidence or argument that the truck complies with any federal standard for

manufactured homes.   Section 42-1-102(106)(b) specifically provides that a

manufactured home cannot have "motive power," which the truck obviously does have.

        Contrary to debtor's assertion, Section 38-41-201.6(1) cannot be read as

---

[4]Debtor does not argue, and did not argue in the proceedings before the
bankruptcy court, that the truck fits any statutory definition of the term "mobile home."
*See generally* Docket No. 16; *see also* Docket No. 13-1 at 63 (noting that [t]he Debtor
does not argue that the Peterbilt Truck is a 'mobile home'" under either Colo. Rev. Stat.
§§ 38-12-201.5(2) or 5-1-301(29)).

enacting a broad exception for living quarters of all types.  Rather, the statute narrowly expands the scope of the homestead exemption by deeming specifically-enumerated structures as "houses" as used in Section 38-41-205.  Those structures are:

- A mobile home as defined in either Section 38-12-201.5(2) or Section 5-1-301(29);

- A manufactured home as defined in either Section 38-29-102(6) or Section 42-1-102(106)(b);

- A trailer as defined in Section 42-1-102(105); and

- A trailer coach as defined in Section 42-1-102(106(a).

Colo. Rev. Stat. § 38-41-201.6.

Debtor argues that Section 38-41-201.6 does not exclude other types of "houses" – such as motor homes – and that, instead of focusing on the structures that are specifically referenced in Section 38-41-201.6, the Court should "focus on the actual use of the home rather than its size or design."  Docket No. 20 at 10.  Debtor's argument finds no support in any Colorado statute or any case interpreting Colorado's homestead exemption.  *In re Laube*, 152 B.R. 260 (Bankr. W.D. Wis. 1993), which debtor cites, is instructive.  In *Laube*, the bankruptcy court found that a truck cab designed to serve as sleeping quarters qualified as a homestead under Wisconsin's homestead exemption.  *Id.* at 262-63.  The relevant statute defined an "[e]xempt homestead" as a "dwelling, including a building, condominium, mobile home, manufactured home, house trailer or cooperative or an unincorporated cooperative association[.]"  Wis. Stat. § 990.01(14).  The *Laube* court, after concluding that the truck was not a building, condominium, house trailer, cooperative, or a mobile home, held that the truck cab was a "dwelling" using that term's ordinary meaning.  *Laube*, 152 B.R.

6

at 262.  The Colorado statute, unlike the Wisconsin statute, does not include a broad, undefined term – such as "dwelling" –  that would permit the Court to look beyond the specifically-enumerated structures that the General Assembly chose to exempt.[5] Moreover, as noted in *Laube*, the creation of a homestead under Wisconsin law "is a fact-bound question based primarily on a determination of the owner's intent."  *Laube*, 152 B.R. at 262 (citing *In re Mann*, 82 B.R. 981, 984 (Bankr. W.D. Wis. 1986)).  Debtor cites no Colorado authority, and the Court is aware of none, that places a similar focus on the inhabitant's intent in determining whether a dwelling is a "homestead." Colorado's homestead exemption, by referencing specific types of dwellings that are to be deemed "houses," focuses on the nature of the dwelling rather than the intent of the occupant.

Although Colorado's homestead exemption is to be liberally interpreted, *Wells*, 29 B.R. at 689, no reasonable interpretation of Colo. Rev. Stat. 38-41-201.6 can expand the exemption to dwellings, such as "motor homes," that the General Assembly

_____

[5]For the same reason, this case is distinguishable from the other authorities that debtor cites that apply other states' broader homestead exemptions.  The court in *In re Meola* found that Florida's homestead exemption statute, which protected "any dwelling house," was intended to "extend the homestead exemption not only to mobile and modular homes but to other, perhaps unforeseeable, types of living quarters[.]" 158 B.R. 881, 882 (Bankr. S.D. Fla. 1993).  In *In re Ross*, the relevant Illinois statute provided a homestead exemption for "*personal property, owned* or rightly possessed by lease or otherwise *and occupied by* [the debtor] as a residence."  210 B.R. 320, 322 (Bankr. N.D. Ill. 1997) (citing 735 ILCS 5/12-901) (emphasis in original).  Finally, in *In re Irwin*, the court found that a motor home was exempt under an Arizona statute that provided an exemption for "[a] mobile home in which [a debtor] resides" where the statute neither defined "mobile home" nor referenced any other statutory definition of the term.  293 B.R. 28, 30-31 (Bankr. D. Ariz. 2003).  The Colorado exemption for certain types of mobile dwellings, by limiting its scope to specific, statutorily-defined types of homes, is more restrictive than its counterparts in Florida, Illinois, and Arizona.

chose not to include in the statute.  The Court agrees with the bankruptcy court's application of the interpretative canon of *expressio unius est exclusio alterius*, *see* Docket No. 13-1 at 75, and finds that the Colorado General Assembly, by including the statutory definitions of "mobile home," "manufactured home," "trailer," and "trailer coach" in its expansion of the homestead exemption to dwellings that are not tied to real property, intended to exclude other types of structures designed to serve as dwellings. *Cf. Henisse v. First Transit, Inc.*, 247 P.3d 577, 580 (Colo. 2011) ("When the legislature specifically includes one thing in a statute, it implies the exclusion of another. . . . Because the General Assembly explicitly included some groups that would not normally be considered 'public employee[s]' under the [Colorado Governmental Immunity Act], it necessarily excluded all other groups not fitting the definition"). Because debtor cannot show that the truck fits into a category of property that is protected by Colorado's homestead exemption, the truck is not exempt.

In his reply, debtor argues that the truck nearly meets the definition of "mobile home" found in Section 38-12-201.5(2) and Section 5-1-301(29) and falls short only because it lacks plumbing, a deficiency that should not preclude a finding that the truck is a homestead.  Docket No. 20 at 6-7.  First, the lack of plumbing is itself disqualifying under both statutory definitions of "mobile home."  Section 38-12-201.5(2) requires mobile homes to have "complete electrical, *plumbing*, and sanitary facilities" (emphasis added).  Section 5-1-301(29) requires mobile homes to have "major appliances and *plumbing*, gas, ane electrical systems installed but needing the appropriate connections to make them operable" (emphasis added).  Second, plumbing is not the only characteristic of a "mobile home" that the truck lacks.  Specifically, Section 38-12-

8

201.5(2) provides that a mobile home is a dwelling that is "designed to be installed in a permanent or semipermanent manner with or without foundation," which the truck is not.  Section 5-1-301(29) provides that a mobile home is a dwelling that "may be occasionally drawn over the public highways, by special permit, as a unit or in sections to its permanent or semi-permanent location."  Debtor argues that the truck satisfies this condition because "it is driven over the public highways."  Docket No. 20 at 7.  Debtor misses the point.  Section 5-1-301(29) provides that a mobile home may "occasionally" be drawn over public highways, but only en route "to its permanent or semi-permanent location."  This definition clearly excludes vehicles that are designed for regular travel over roads.

Finally, although debtor concedes this matter could be "disposed of summarily" with reference to the statutory definitions of exempt homesteads, debtor encourages the Court to adopt a broad concept of "homestead" consistent with the policy goal of providing debtors with shelter.  Docket No. 20 at 16-17.  While the Court is sympathetic to debtor's argument, and while it is undisputed that the truck served as debtor's living quarters, the Court is "limited to those exemptions expressly provided by the statutes of this state."  Colo. Rev. Stat. § 13-54-107.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the June 24, 2015 Memorandum Opinion and Order on Homestead Exemption [Docket No. 13-1 at 56-66] is AFFIRMED.

DATED March 24, 2016.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge